IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAWRENCE ROSEN, M.D., } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 2:14-cv-0922-WMA |
| } | |
| PROVIDENT LIFE AND ACCIDENT } | |
| INSURANCE COMPANY, } | |
| } | |
| Defendant. } | |

**ADDENDUM TO MEMORANDUM OPINION OF JANUARY 21, 2015**

In its opinion of January 21, 2015, the court overlooked the significance of Exhibit "A" attached to Rosen's second amended complaint. During briefing, Provident argued that this document was irrelevant and should not be considered. As the court now sees it, the document has great significance as an admission against Provident's interest, and is therefore highly relevant.

The document is a Provident internal memorandum disseminated on October 2, 1995, by Jeff McCall. The court assumed, either correctly or incorrectly, that the document was included in Rosen's lengthy second amended complaint as support for his RICO claims, and was not offered in defense of Provident's motion for partial summary judgment based on alleged ERISA preemption of the state law claims. The court now realizes how important this memorandum is to a decision on Provident's ERISA preemption claim. Even though the court has already denied ERISA preemption, a brief addendum is in order.

The insurance policies involved in Rosen's case were sold in 1990, without any oral or written mention of ERISA. In other words, there was nothing at that time to indicate an intention to form an employee benefits plan governed by ERISA. Five years later, on October 2, 1995, if the McCall memorandum can be believed, Provident realized that if any of its disability insurance policies could be shoe-horned into the ERISA mold, a great deal of money could be saved.

The pertinent language in the memorandum is as follows:

> In order to take advantage of ERISA protection, we need to be diligent and thorough in determining whether a policy is covered. Accordingly, I have attached a rough draft of questions that should be asked in our claim investigation process. I recommend that it be used for <u>all</u> claims. The key for determining the applicability of ERISA is whether or not the employer "sponsors" or "endorses" the plan. If the employer <u>pays</u> the premium, the policy would usually, but not always, be considered to be governed by ERISA. Salary allotment or payroll deduction arrangements, by themselves, do not necessarily mean that a policy is subject to ERISA. While our objective is to pay all valid claims and deny invalid claims, there are gray areas, and ERISA applicability may influence our course of action.
>
> Another requirement needed in order to take advantage of the protection offered by ERISA, is to establish a formal appeal process for ERISA situations. When we deny a claim, we must include language in our letter that informs the claimant of the right to appeal our decision within 60 days. I have attached a copy of sample language. The appeal must be in writing and should be reviewed by a panel specifically established to review ERISA appeals. I recommend that the panel be composed of Chris Kinback, Bob Parks, Becky Absher, Tom Timpanaro and me.

None of the essential elements for an ERISA plan described by

McCall were in the disability policies sold to Rosen, and upon which he now sues. There was no "formal appeal process". There was no "endorsement" by the employer. There was no "sponsor" of the policies. The requirements for establishing an ERISA plan were the same in 1990, in 1995, and at the time Rosen became disabled, but Provident did not start the characterizing process until Rosen filed his suit.

  The memorandum opinion of January 21, 2015, is hereby AMENDED to add the foregoing.

  DONE this 29th day of January, 2015.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE