FILED

2015 Jul-10  PM 02:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LAWRENCE ROSEN, M.D.,            }
                                 }
      Plaintiff,                 }
                                 }      CIVIL ACTION NO.
v.                               }      2:14-CV-00922-WMA
                                 }
PROVIDENT LIFE AND               }
ACCIDENT INSURANCE               }
COMPANY,                         }
                                 }
      Defendant.                 }

**MEMORANDUM OPINION**

Under the Federal Rules of Civil Procedure, parties have a general duty to disclose and to cooperate during discovery. See Fed. R. Civ. Proc. 26. "In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention." Fed. R. Civ. Proc. 26, Advisory Committee Notes. In the above entitled case, instead of cooperating as envisioned by the rule makers, the parties, particularly defendant Provident Life and Accident Insurance Company ("Provident"), have excessively filed layer upon layer of intertwined discovery motions and objections to discovery requests.

"Federal Rule of Civil Procedure 26 authorizes a court to limit discovery where such discovery is cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information, and the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in

controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1558-59 (11th Cir. 1985). A "party resisting discovery must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* at 1559 (citation omitted). In this case that burden is on Provident. The scope of discovery is largely within the discretion of the trial court because "[d]iscovery should be tailored to the issues involved in the particular case." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir. 1992). Exercising this discretion, the court now undertakes to resolve the parties' multi-faceted discovery dispute.

Shortly after this court's January 21, 2015 memorandum opinion, order, and addendum (Doc. 38, 39, and 40), which this court believed would smooth out the discovery flaps,[1] plaintiff Lawrence Rosen ("Rosen") filed a renewed motion to compel production of documents (Doc. 44) and a renewed motion to compel deposition testimony (Doc. 45). Provident replied to both motions on March 9, 2015 (Doc. 47 and 48), whereupon Rosen filed responses on March 19, 2015 (Doc. 50 and 51). Provident then filed a separate motion to strike Rosen's replies, objecting to and moving to exclude allegedly inadmissible documents and references. (Doc. 52).

---

[1] Rosen originally filed a motion to compel production of documents (Doc. 27) and a motion to compel deposition testimony (Doc. 29) on November 13, 2014.

On April 20, 2015, Provident moved for a protective order (Doc. 55), to which Rosen replied on April 22, 2015 (Doc. 56). On April 27, 2015, Provident filed a motion to compel production of documents. (Doc. 57). Rosen replied on April 29, 2015 (Doc. 58), and Provident responded June 11, 2015 (Doc. 60). Finally, on May 28, 2015, Rosen filed a motion to compel, supplementing his previously filed renewed motion to compel. (Doc 59). Provident replied on June 24, 2015. (Doc. 61).

Having been monumentally briefed, the motions are now under submission. For the reasons expressed below, the court will deny Provident's motion to strike (Doc. 52), motion for a protective order (Doc. 55), and motion to compel (Doc. 57), and will grant Rosen's renewed motion to compel and supplement to his renewed motion to compel (Doc. 44 and Doc. 59) and renewed motion to compel deposition testimony (Doc. 45).

## I.   Provident's motion to strike

"The United States Supreme Court has recognized that the discovery rules are to be accorded a broad and liberal treatment, and discovery should be allowed if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Dunbar v. United States*, 502 F.2d 506, 509 10 (5th Cir. 1974) (citing *Hickman v. Taylor*, 329 U.S. 495, 507-508 (1947)).

Here, Provident's motion to strike, labeled as an objection and motion to exclude, seeks to exclude certain documents and

3

references contained in Rosen's various motions also currently under submission, on the basis that the information is inadmissible hearsay and not relevant. (Doc. 52 at 1). However, Provident deliberately overlooks the purpose of these certain documents and references and incorrectly points to admissibility at trial as the basis for their exclusion. (Doc. 52). Rosen does not offer these documents and references from other factual findings in other cases or court proceedings for any dispositive value in this case. Rather, Rosen **clearly** offers these documents and references to "highlight the fact that the documents [] requested exist and [] are easily accessible by Provident." (Doc. 50 at 4). Even without these certain documents and references, Rosen's requests are far from being "simply a 'fishing expedition' whose burdens or expenses "outweigh[] [their] likely benefit." *Shannon v. Albertelli Firm, P.C.*, 2015 WL 2114055, at *4 (11th Cir. May 7, 2015). Rather, these documents actually reduce the discovery burden on Provident by providing additional clarity as to the information Rosen seeks to discover. *Id*. Therefore, Provident's objection and motion to exclude inadmissible documents and references will be denied.

Provident's motion approaches the prohibited line under the federal rules between a legal contention warranted by reason and existing law and sanctionable frivolousness. Fed. R. Civ. Proc. 11. A motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice . . . [and] should be granted

4

only when the pleading to be stricken has no possible relation to the controversy." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, Fla., 306 F.2d 862, 868 (5th Cir. 1962); see *Bonner v. Prichard*, 661 F.2d 1206, 1209 (5th Cir. 1981). "A court may take judicial notice of its own records and the records of inferior courts." *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987); see Fed. R. Evid. 201. Under the disfavored posture of a motion to strike, Provident seeks to strike Rosen's reference to the judicial records in other district court cases, in stark contrast to the established notions of judicial notice. (Doc. 52). Being a legal contention within the boundaries of Rule 11 is even more problematic for Provident inasmuch as Rosen merely offers these documents in his discovery motions to prove the documents **exist** and **not** the truth of the documents. See *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999) (distinguishing between judicial notice of public records offered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents).

## II.  Provident's motion for a protective order

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Therefore, "a protective order shall issue only upon a showing of "good cause" [so that] [t]he burden is upon the movant to show the necessity of its

issuance, which contemplates a **particular** and **specific** demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) (emphasis added); see *Bonner*, 661 F.2d at 1209.

Provident's proposed protective order does not identify particular or specific documents. Instead it merely identifies categories that it thinks should remain confidential and remarkably allows the parties in good faith to designate confidential "any other document, information, or testimony." (Doc. 55 at 13). While Provident's motion does speak about specific documents it likely would categorize as "confidential," such items as "Performance Based Incentive (PBI) FAQ's, Long Term Incentive (LTI) FAQ's, Compensation Program Summary, Benefits Center Recognition Awards Brochure, and Spotlight Program description" (Doc. 55 at 3), these documents are **not** identified in the protective order **nor** is their relationship to one of the stated general categories identified or explained (Doc. 55 at 12-18). While an "umbrella" protective order may be appropriate in certain "complicated cases where document-by-document review of discovery materials would be unfeasible," Provident does not demonstrate or even try to explain why this case warrants such an approach. *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).

At best, Provident's reasons for the general protective order

are hypothetical and conclusory. For example, Provident cites the trade secret language of Rule 26(c)(1)(G) as its basis for a general protective order and argues it will restrict disclosure of documents pertaining to compensation, bonus, and performance criteria similar to how other courts that have restricted discovery on those grounds. (Doc. 55 at 4-7). Yet, the trade secret provision of Rule 26 is merely one discretionary factor for a protective order under Rule 26, and a court is under no obligation to protect trade secrets in every case. See Fed. R. Civ. Proc. 26 ("[t]he court **may**, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . a trade secret or confidential research, development, or commercial information not be revealed") (emphasis added). Provident fails to demonstrate how  such information is proprietary to Provident or how its disclosure injures Provident beyond its alleged violations of law.

Provident argues that its protective order is warranted because discovery may reveal Provident's internal operations and procedures and that allowing disclosure as "broader during discovery than the question of relevance and materiality is at trial" (Doc. 55 at 7-8), would destroy the concept of protection. However, Provident overlooks that such information is the **very object** of Rosen's RICO claims and ripe for discovery. "Conclusory

allegations of competitive harm from disclosure are not enough, especially when the redacted information is central to the resolution of the case." *Dish Network L.L.C. v. TV Net Solutions, LLC*, 2014 WL 4954683, at *2 (M.D. Fla. Oct. 2, 2014); see *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) ("[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing"). Unlike the claims in the cases cited by Provident, this case not only involves claims against Provident for denial of insurance benefits to Rosen, but also involves claims against Provident under RICO, alleging Provident schemed to deny payouts to Rosen and numerous other policyholders via mail fraud, interference with commerce, and racketeering. (Doc. 19 at 24-30, 40-43 and Doc. 38).

Finally, Provident asserts that a protective order is called for to protect private and confidential information of Provident's insureds and claimants. (Doc. 55 at 8). Yet, Provident fails to show why protections under the Federal Rules of Civil Procedure and this court's local rules are insufficient for such personal information. See Fed. R. Civ. Proc. 5.2 and N.D. Ala. LR 5.1. Also, Provident does not specifically identify such information nor show that disclosure of such information "is likely to result in a clearly defined and very serious injury to the designating party." *Lockheed Martin Corp. v. Boeing Co.*, 2005 WL 5278461, at *2 (M.D. Fla. Jan. 26, 2005).

Therefore, because Provident fails to demonstrate good cause for its general protective order, its motion for a protective order will be denied.

**V.   Provident's motion to compel production of documents**

"The party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted . . . [with] '[t]he onus [] on the party resisting discovery to demonstrate specifically how the objected-to information is unnecessary, unreasonable or otherwise unduly burdensome.'" *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010) (quoting *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 2001 WL 34079319 (S.D. Fla. 2001)).

**a.   Request 5**

Provident's motion to compel production of documents in request 5[2] is not ripe for review. Rosen asserts he has already provided to Provident electronic Portable Document Format ("PDF") copies of CPT code reports from 2004 to 2007. (Doc. 60 at 2). While Provident's original request did **not** ask for the CPT reports from January 1, 2005 to the present in **electronic format**, Provident's motion to compel now demands Rosen produce such codes in Excel format. (Doc. 57 at 5). In Rosen's reply, he offers to produce

_____

[2] "Any and all CPT Code records or other procedure code records reflecting work performed by you from any hospital, practice or clinic for which you worked from January 1, 2005, to the present." (Doc. 57 at 3).

Excel format CPT code reports from April 2007 to November 2014 "if Provident agrees to pay the cost associated with producing those files." (Doc. 60 at 3). In Provident's response, it indicates it has agreed "to pay the reported additional, reasonable costs of a second production of the electronic CPT codes." (Doc. 61 at 3). Given this apparent miraculous bit of cooperation between the parties, the court need not compel production of Excel format CPT code reports from April 2007 to November 2014, and Provident's motion to compel is no longer ripe for review.

Insofar as any dispute may continue to exist between the parties as to Rosen producing in Excel format CPT codes prior to April 2007, Provident's motion to compel will be denied because Rosen has produced such codes in electronic PDF format and further production in another electronic Excel format is unnecessarily duplicative, and the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. Proc. 26(b)(d)(C). The federal rules specifically provide that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms [and] [a] party **need not produce** the same electronically stored information in **more than one form**." Fed. R. Civ. Proc. 34(b)(2)(E)(ii)-(iii) (emphasis added). Additionally, Provident mentions in a footnote it seeks to compel production of electronic CPT codes from November 2014 up

through the present. (Doc. 61 at 3). However, nowhere does Provident demonstrate it has requested such supplementary documents from Rosen or that Rosen has refused to produce such supplementary documents.

Therefore, apart from the parts of the motion no longer ripe for review given this recent burst of apparent cooperation by the parties, for any dispute that continues to remain as to request 5, the motion will be denied.

**b.   Request 24**

The materials Provident seeks under request 24[3] fall within the protection of the work product doctrine and therefore are not discoverable, being outside the boundaries of Rule 26. "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman*, 329 U.S. at 510. "[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *Id.* at 512. Here, Provident makes no attempt to establish any particular reason why

_____

[3] "Any and all documents obtained or received from third parties or sent to third parties by you or on your behalf, concerning or relating in any way to your allegations in the First Amended Complaint or to Provident Life and Accident Insurance Company." (Doc. 57 at 6).

Rosen should be compelled to produce these materials. See Fed. R. Civ. Proc. 26(3)(A). Rather, Provident argues that since the documents are those "received from third parties," they are outside the scope of the work product doctrine. (Doc. 61 at 5); cf. *Hunter's Ridge Golf Co. v. Georgia-Pac. Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006) ("the work product doctrine does not shield from discovery documents created by third-parties"). However, even for documents created by third-parties, the work product doctrine protects such materials where there is a showing of "a real, rather than speculative, concern that the thought processes of counsel in relation to pending or anticipated litigation would be exposed." *Hunter's Ridge Golf Co.*, 233 F.R.D. at 681 (quoting *Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 825 F.2d 676, 680 (2nd Cir. 1987)). Provident's broad and unfocused request asking for all documents that "concern[] or relat[e] **in any way** to your allegations in the First Amended Complaint or to Provident" is a overly bold attempt to discover all Rosen's materials in preparation of this case.

Furthermore, this inclusion of certain third-party documents under the work product doctrine is particularly warranted "where a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be." *Hunter's Ridge Golf Co.*, 233 F.R.D. at 681 (citing *Gould Inc. v. Mitsui Mining &*

*Smelting Co., Ltd.*, 825 F.2d 676 (2nd Cir. 1987) and *Sporck v. Peil*, 759 F.2d 312, 316 (3rd Cir. 1985)). Some of the very third-party materials Provident now seeks to discover under this request are Provident's own business records, which Provident itself has not produced yet, and that have been identified and obtained only by the diligence and investigation of Rosen's counsel. (Doc. 60 at 6). Therefore, the work product doctrine protects such materials from discovery by Provident.

While such materials are protected, under the federal rules Rosen must still provide Provident a privilege log. See Fed. R. Civ. Proc. 26(b)(5). However, the federal rules merely require a party to "do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. Proc. 26(b)(5)(A)(ii). Therefore, "in appropriate circumstances, the court may permit the holder of withheld documents to provide summaries of the documents by category or otherwise to limit the extent of his disclosure." *S.E.C. v. Thrasher*, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996). In this case, Rosen need only describe the nature of the materials withheld by category.

Therefore, Provident's motion to compel will be denied.

## IV. Rosen's renewed motion to compel production of documents and supplement to his renewed motion to compel

"The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in

supplying the requested information." *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000); see *Panola Land Buyers Ass'n*, 762 F.2d at 1558-59. "An objection must show specifically how a [discovery request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." *Coker v. Duke & Co.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998) (citation omitted); see

Fed. R. Civ. Proc. 26 ("[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence").

### a.   Request 7

Provident fails to show why request 7[4] should not be discoverable. While Provident questions the direct relevance of promotional literature and pamphlets in light of Rosen's testimony that he did not "receive any brochures or other materials" (Doc. 47-1 at 4), Provident fails to show how such information is not "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Proc. 26(b). For Rosen's fraud, bad faith, and breach of contract claims, not only do these documents indirectly relate to Provident's marketing and promotion of the policies it sold to Rosen, but further, Provident makes no argument that these materials were **not** received by Rosen's insurance broker

---

[4] "All promotional literature and sales pamphlets explaining the type of policy that was sold to Plaintiff." (Doc. 44 at 3-4).

who was involved in procuring the policies at issue here. (Doc. 19 at 3 and Doc. 32-2). Additionally, these documents also are relevant to Rosen's RICO claims, which allege Provident marketed and promoted such policies as part of its racketeering scheme. (Doc. 19 at 3). Therefore, pursuant to Rule 26 these materials are relevant and must be produced.

### b.   Request 9

Provident fails to show why request 9[5] should not be granted. While Provident complains of the breadth of the request (Doc. 47 at 10), Rosen has agreed to limit the request as to the time period from 2003 to the present (Doc. 50 at 10). Given Rosen's RICO claims alleging an extensive pattern of racketeering activity in the handling of disability claims (Doc. 19 at 24-30, 40-43), limiting this discovery request beyond the time period agreed to would be improvident. Furthermore, while Provident generally argues such a broad request is unreasonable, its argument is conclusory and fails specifically to show why responding to such a request is not feasible. "The recitation of expense and burdensomeness are merely conclusory." *Panola Land Buyers Ass'n*, 762 F.2d at 1559. Therefore, pursuant to Rule 26 the request is not overboard and the materials must be produced.

---

[5] "All claims manuals, procedural manuals, operational manuals, or other documents of whatever kind which direct or instruct employees concerning the handling of disability claims." (Doc. 44 at 4).

### c.   Request 12

Provident fails to show why the items in request 12[6] should not be discoverable. While Provident complains of the breadth of the request (Doc. 47 at 12-14), Rosen has agreed to revise the request to require Provident to produce the names of every person who purchased a series 300 individual disability policy from Brian Askelson, the Provident agent who sold Rosen his policies, between 1988 and the time such policies were no longer sold in the mid 1990s (Doc. 50 at 11). This revised request is reasonable and tailored to the particular circumstances of Rosen's case, mirroring the approach both Provident and Rosen cite in their briefing in *Ex parte Henry*, 770 So. 2d 76, 80-81 (Ala. 2000). (Doc. 47 at 13 and Doc. 50 at 11). Therefore, the revised request is consistent with Rule 26 and such materials under request 12 must be produced.

### d.   Request 13

Provident fails to show why request 13[7] should not be granted. Again, while Provident complains of the breadth of the request (Doc. 47 at 14-15), Rosen has agreed to revise the request limiting production to the time period between 2003 and the present (Doc. 50

---

[6] "Any complaints filed against this Defendant concerning policies like that issues to the Plaintiff, or similar thereto, with any State Insurance Department or other entities during the last five (5) years." (Doc. 44 at 6).

[7] "Any and all documents of whatever type filed with the Alabama Insurance Department relating to the type of insurance policy sold to Plaintiff." (Doc. 44 at 8).

16

at 11). Given Rosen's fraud, bad faith, and RICO claims alleging an extensive pattern of racketeering activity in the handling of disability claims (Doc. 19 at 24-30, 40-43), limiting this discovery request beyond the said time limit would be unduly restrictive. Further, although Provident argues the request for documents "relating to the type of insurance policy sold to [Rosen]" is too vague (Doc. 47 at 14), given that Provident itself sold Rosen the said insurance policy, the request is clear on its face. Therefore, the revised request is within the boundaries of Rule 26 and such materials must be produced.

### e.   Request 14

Provident fails to show why request 14[8] should not be granted. Although Provident argues Rosen's request is internally contradictory (Doc. 47 at 15), on its face the request consistently seeks documents relating to actions by the insurance department or attorney general of a state, **including** correspondence within the last five years between Provident and said insurance departments of such states (Doc. 44 at 9). Instead, Provident's own response is contradictory; despite Provident's assertion that Rosen's request

---

[8] "Documents evidencing or relating to any reprimands, actions or complaints, or disciplinary actions taken against this Defendant by the Insurance Department or Attorney General of any state in the United States of America including Alabama. Our response should include all correspondence between this Defendant and the Insurance Department for the State concerning any complaints, lawsuits or claims made by a policyholder, insured or assignee within the last five years." (Doc. 44 at 9).

14 is so vague and broad as to render impossible a response, Provident itself states that "there have been no such actions by the Alabama Department of Insurance or the Alabama Attorney General within the five years." (Doc. 47 at 16).

Further, while Provident objects to the lack of a geographic limitation to the request (Doc. 47 at 16), it overlooks that Rosen's request is limited to the fifty states and, more importantly, is appropriate in breadth given that Rosen's claims under RICO allege an extensive multi-state pattern of racketeering activity in the handling of disability claims (Doc. 19 at 24-30, 40-43). Therefore, the request is within the boundaries of Rule 26 and such materials must be produced by Provident.

**f.  Request 15**

Provident fails to show why request 15[9] should not be granted. Provident has already provided Rosen with a list of all lawsuits in Alabama pursuant to this request. Provident objects to the geographic scope extending beyond Alabama. (Doc. 47 at 17). Specifically, Provident points to where "the Alabama courts that have considered this issue have consistently limited the geographic scope of production required for lawsuit information to the State of Alabama." (Doc. 47 at 17). However, while Rosen raises certain

---

[9] "A copy of all lawsuits filed against this Defendant which involves allegations of fraud, bad faith, racketeering or other wrongdoing arising under the disability policies for the last five (5) years." (Doc. 44 at 10).

state law claims similar to these cases, Rosen also raises federal claims under RICO alleging an extensive multi-state pattern of racketeering activity in the handling of disability claims (Doc. 19 at 24-30, 40-43). Therefore, the scope of Rosen's request is within the boundaries of Rule 26 and such materials must be produced.

### g.    Request 17

Provident fails to show why request 17[10] should not be granted. Again, while Provident objects to the geographic scope of the request beyond Alabama (Doc. 47 at 18-19), the request is reasonable and not otherwise unduly burdensome considering Rosen's claims under RICO alleging an extensive multi-state pattern of racketeering activity in the handling of disability claims (Doc. 19 at 24-30, 40-43). Further, although "complaint" may conceivably include a phone call or letter by an insured (Doc. 47 at 18), it is not unreasonably vague and therefore capable of discovery. Because the request is within the boundaries of Rule 26, such materials must be produced.

### h.    Request 19

---

[10] "Produce all documents and records which reflect, refer and/or relate to the names, last known addresses and telephone numbers of each person who has filed a complaint with any State Department of Insurance during the last five (5) years concerning fraud, deceit, deceptive trade practices, suppression, conspiracy to defraud, or any other type of unethical conduct by Provident Life & Accident Insurance Company or any of its current or former brokers and/or agents concerning disability income insurance policies." (Doc. 44 at 11).

Provident fails to show why request 19[11] should not be discoverable. First, Provident's objection that "claims examiner" is vague (Doc. 47 at 20) is no longer ripe for review given that Rosen has agreed to revise the request to a specific list[12] of individuals. (Doc. 50 at 12).

Further, Provident asserts that while it is willing to produce documents about its incentive compensation and bonus plans in general, the public policy interest against disclosure and the privacy interest employees have in their personnel files outweighs the value of producing such information specific to certain employees. (Doc. 47 at 21-22); see *Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127 (D. Mass. 1995) (finding discovery of employee personnel files should be limited given employee privacy interests) and *Bishelli v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 280850, at *4 (D. Colo. Jan. 31, 2008) (finding against production of an employee's personnel file except where it actually contains information that the adjuster engaged in bad faith conduct). While

---

[11] "Produce the personnel file(s) for all the claims examiners that have worked on Dr. Rosen's claim made the basis of this litigation since 2011. This should include but not be limited to documents detailing their compensation and/or bonus plans." (Doc. 44 at 12).

[12] "Susan M. Watkins; Patricia Clermont, RN; Andrea L. Coraccio, M.Ed., CRC; Katie Heselton; Amy S. Holland; Kelley A. Feeley; Jacqueline Germain, M.D.; Christina P. Lubin; Marc A. Champoux; Lisa Ann Francoise-Fields, CPA; Matthew J. Cartier; Mark Doyle, Jean-Marie Merritt, MA; CRC, Monika Raci; Kathleen Hancock, RN, BSN; Judith L. Cohen; Tammy L. Kasper; and Brian C. Joslyn." (Doc. 50 at 13).

these interests certainly require close consideration by this court, they are not dispositive. Rather, Rosen's request is relevant to his bad faith, fraud, and RICO claims alleging an extensive pattern of racketeering activity in the handling of disability claims, particularly in the way Provident compensated and incentivized its employees. (Doc. 19 at 23-30, 40-43); see *Whittingham*, 164 F.R.D. at 127-28 (noting that in the civil rights context personnel files are discoverable where relevant to establishing a pattern or practice of discrimination). Additionally, Provident fails to demonstrate how existing privacy safeguards under the Federal Rules of Civil Procedure and this court's local rules are inadequate. See Fed. R. Civ. Proc. 5.2 and N.D. Ala. LR 5.1.

Therefore, the request is within the boundaries of Rule 26 and such materials must be produced.

### i.  Requests 22 & 23

Provident fails to show why the items in requests 22 and 23[13] should not be discoverable. Despite Provident's assertion that such materials are confidential, private, and that there is no justification for invading that privacy (Doc. 47 at 24), the request is relevant and reasonably calculated to lead to the discovery of evidence relevant to Rosen's bad faith, fraud, and

---

[13] "Produce the CPT code analysis and ERISA related documents contained in the claims file for Wiley H. Justice, M.D., policy #7066319." (Doc. 44 at 13).

RICO claims alleging an extensive multi-state pattern of racketeering activity in the handling of disability claims (Doc. 19 at 24-30, 40-43).

Also, Rosen's request for "ERISA related documents" in Provident's claims file for Dr. Justice is relevant and discoverable given Rosen's bad faith, fraud, and RICO claims alleging Provident used ERISA preemption in claims involving "own occupation" policies to deny benefits and engage in racketeering activity (Doc. 19 at 18-19 and Doc. 50 at 14). While ERISA related documents" in Dr. Justice's claim file are relevant given they involve the same the 337 "own occupation" policy at issue here, Rosen notes that Provident appears to be saying that there were **no** ERISA related documents in the claims file for Justice. (Doc. 50 at 14). Specifically, Provident claims that it "did not assert an ERISA affirmative defense in the Justice case nor was the Justice claim handled as an ERISA claim." (Doc. 47 at 26). If correct, this largely moots the issue, yet insofar as such materials do exist or have existed, Provident will be compelled to produce such materials under this request given that the request falls within the boundaries of Rule 26.

**j.   Requests 29 and 30**

Provident fails to show why requests 29[14] and 30[15] should not

---

[14] "Produce all guidelines, policies, directives, or instructions, howsoever denominated, that were in affect and applicable when the list bill mechanism was instituted at

be granted. This court denied Provident's motion for partial summary judgment on ERISA preemption (Doc. 38, Doc. 39, and Doc. 40). These requests are material and relevant to Rosen's non-preempted bad faith, fraud claims and his RICO claim alleging Provident engaged in a pattern and practice of using salary allotment agreements and list bills to use ERISA preemption in its racketeering activity in the handling of disability claims. (Doc. 19 at 18-19). Indeed, as this court has already noted, Rosen alleges that "Provident realized that if any of its disability insurance policies could be shoe-horned into the ERISA mold, a great deal of money could be saved." (Doc. 40 at 2). Therefore, the request is within the boundaries of Rule 26 and such materials must be produced by Provident.

For the above mentioned reasons, Rosen's renewed motion to compel and supplement to his renewed motion to compel will be granted.

## V.   Rosen's renewed motion to compel deposition testimony

Under Rule 30, when directing a deposition notice to an organization, "[i]n its notice or subpoena, a party may name as the

---

Northeast Alabama Urology Center, P.C."(Doc. 44 at 14-15).

[15] "To the extent that the Defendant relies upon any salary allotment agreement, in whole or in part, to establish the existence of an employee benefit plan of which Plaintiff's insurance policies are part, produce all such agreements, guidelines, policies directives or instructions, howsoever denominated, applicable to the creation or use of such salary allotment agreements." (Doc. 44 at 8).

deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination . . . [and] [t]he named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify" Fed. R. Civ. Proc. 30. "Normally the process [associated with depositions under Rule 30(b)(6) ] operates extrajudicially." *New World Network Ltd. v. M/V NORWEGIAN SEA*, No. 05-22916 CIV, 2007 WL 1068124, at *2 (S.D. Fla. Apr. 6, 2007) (quoting *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 79 (D.D.C.1999). "Good cause exists to intervene only when there has been a compelling and sufficient demonstration that the procedures specified in the Rule have not been or cannot be followed." *Id*.

As an initial matter, Provident claims Rosen's motion to compel is premature because it has not been served a formal 30(b)(6) deposition notice. (Doc. 48 at 5). See e.g., *Haaf v. Flagler Const. Equip., LLC*, 2011 WL 1871159, at *4 (S.D. Fla. May 16, 2011) ("[because] these general deposition topics have as yet only been identified in an informal email and not in a notice of deposition as contemplated by Federal Rule of Civil Procedure 30(b)(6) [t]he result is that Plaintiff in effect asks for an impermissible advisory opinion").

In this case it appears that at the time Rosen filed his

motion, despite his continued efforts, Provident had yet to follow up on proposed deposition dates. (Doc. 45-2). While generally the process begins with a formal deposition notice, Provident's communication delays respecting deposition dates and designations should not for technical inadequacies prejudice Rosen's efforts to depose pursuant to Rule 30(b)(6). Rule 26(g)(1) (outlining a party's duty during discovery requests, responses, and objections to not "not interpose[] for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"). Furthermore, Rosen has since sent a formal 30(b)(6) discovery notice to Provident, which included the disputed deposition topics. (Doc. 51-1). Therefore, being ripe for review, the court reviews Provident's specific objections to the deposition topics below.

### a. Topic 2

Consistent with the federal rules, Rosen's deposition topic 2[16] is relevant and describes with reasonable particularity the matter for examination. Fed. R. Civ. Proc. 26(b) and 30(b)(6). While Provident concedes that it has produced the Operations Management and Reporting ("OMAR") system report as it relates to Rosen's own disability insurance claim, Provident objects to producing a

---

[16] "Operations Management and Reporting ('OMAR') system and monthly reports generated (weekly and monthly) for Individual Disability claims processed by the Worcester Benefit Center." (Doc. 45 at 3).

witness to testify on the entire OMAR system for individual disability claims processed by the Worcester Benefit Center. (Doc. 48 at 8). Although Provident bemoans the burden of producing a witness to testify on the entire system, which it claims would take months to complete and require review of millions of pages of paper on tens of thousands of open claims (Doc. 48 at 8-9), the scope of such testimony is reasonable, particularly in light of Rosen's RICO claims alleging a pattern and practice of managing the block of disability policies to avoid coverage and increase profits (Doc. 45 at 3 and Doc. 51-4). Additionally, Provident's claim that the topic is irrelevant because "Disability Benefits Specialists do not have access to the OMAR system" (Doc. 48 at 9-10) ignores the relevance of the OMAR system to Rosen's RICO claims. Rosen also clarifies that producing a witness on this topic would not require reviewing individual data on thousands of claims (Doc. 51 at 3), nor would personal data or medical information of claimants need to be divulged (Doc. 51 at 3). Therefore, for purposes of discovery, topic 2 is sufficiently relevant and stated with reasonable particularity. See Fed. R. Civ. Proc. 26 and 30.

**b. Topics 3 & 4**

Consistent with the federal rules, Rosen's deposition topics 2[17] and 3[18] are relevant and describe with reasonable particularity

---

[17] "Employee Bonus Compensation plans for employees working on Individual Disability claims including performance based incentives, how bonus criteria are established and what criteria

the matters for examination. Fed. R. Civ. Proc. 26(b) and 30(b)(6).
While Provident has produced its Management Incentive Compensation
Plan of 2008 and Stock Incentive Plan of 2007 (Doc. 48 at 10-11),
disclosing only these compensation documents is insufficient under
these topics, particularly given Rosen's RICO claims. Provident
additionally maintains that the topics are overbroad because
employee bonuses and incentives were not based on the number of
claims reviewed, approved, or denied and Provident bases this
conclusion on certain documents it refuses to disclose until Rosen
agrees to Provident's protective order. (Doc. 48 at 10-12). Beyond
the fact that the logical nexus between Provident's overbreadth
objection and the protective order is attenuated at best, as the
court explains above, Provident's protective order will be denied.
Therefore, for purposes of discovery topics 3 and 4 are within the
acceptable boundaries of discovery. See Fed. R. Civ. Proc. 30.

### c. Topics 5 and 6

Consistent with the federal rules, Rosen's deposition topics
5[19] and 6[20] are relevant and describe with reasonable particularity

are used to award bonuses on the individual level and the
department level." (Doc. 45 at 4).

[18] "Executive Bonus Compensation plans including
performance-based incentives, how bonus criteria are established
and what criteria are used to award bonuses to each executive."
(Doc. 45 at 4).

[19] "Organization and procedural changes that were created
and implemented as a result of the Targeted Multistate Market
Conduct Examination December 31, 2002 "Initial Review" and
February 29, 2004 "Follow-Up Review" for processing individual

the matters for examination. Fed. R. Civ. Proc. 26(b) and 30(b)(6).
While Provident asserts that it does not know what is meant by
"organizational and procedural changes" or "as a result of" (Doc.
48 at 13), Rosen attaches as an exhibit the actual report mentioned
in the topics, thereby demonstrating the clear and precise meaning
and scope of such changes (Doc. 51-5). Therefore, for purposes of
discovery topics 5 and 6 are within the acceptable boundaries of
discovery. See Fed. R. Civ. Proc. 30.

**d. Topic 7**

Consistent with the federal rules, Rosen's deposition topic 7[21]
describes with reasonable particularity the matter for examination.
Fed. R. Civ. Proc. 26(b) and 30(b)(6). While Provident designates
a witness for the topic as it relates to Rosen and denials of his
claim, Provident objects as overly-broad CPT code analytical
practices in effect from 2000 to the present. (Doc. 48 at 15).

---

disability ('IDI') policy claims." (Doc. 45 at 5).

[20] "Training that was implemented as a result of the
Targeted Multistate Market Conduct Examination December 31, 2002
"Initial Review" and February 29, 2004 "Follow-Up Review" for
processing 'IDI' policy claims." (Doc. 45 at 6).

[21] "Analysis of CPT codes for IDI claims, including those
that:
- resulted in Dr. Rosen's claim being paid under Residual
  Disability rather than Total Disability;
- CPT code analysis of Dr. Ellis' policies
  (policy#00545997, 00701856, 00410675);
- CPT code analysis of Dr. Justice's policy (policy
  #007066319);
- CPT code analytical practices in effect from 2000 to
  the present." (Doc. 45 at 7).

However, in light of Rosen's RICO claims alleging a racketeering scheme to deny paying benefits, the topic, while broad, is reasonably limited in time and stated with sufficient particularity. (Doc. 51 at 5-6). Therefore, for purposes of discovery topics 5 and 6 are within the acceptable boundaries of discovery. See Fed. R. Civ. Proc. 30.

### e. Topic 8

Consistent with the federal rules, Rosen's deposition topic 8[22] is relevant and describes with reasonable particularity the matter for examination. Fed. R. Civ. Proc. 26(b) and 30(b)(6). While Provident asserts it does not know what is meant by "monitoring" or "evaluating" in Rosen's deposition topic (Doc. 48 at 17), Rosen points to and attaches a 2013 Proxy Statement written by Provident itself to its shareholders using the same terms it now claims are unclear. (Doc. 51-2 at 26). Further, although the topic dates back to 2008, three years before Rosen filed his disability claim (Doc. 48 at 17), the topic relates to Rosen's RICO claims and is reasonably calculated to discovering a pattern and practice of managing the block of disability policies to avoid coverage and increase profits (Doc. 45 at 8). Therefore, for purposes of discovery topic 8 is sufficiently relevant and stated with reasonable particularity. See Fed. R. Civ. Proc. 26 and 30.

---

[22] "Monitoring, evaluating and making recommendations to the Board regarding matters pertaining to the Individual Disability Closed Block segment from 2008 to present." (Doc. 45 at 8).

**f. Topic 9**

Consistent with the federal rules, Rosen's deposition topic 9[23] is relevant and describes with reasonable particularity the matter for examination. Fed. R. Civ. Proc. 26(b) and 30(b)(6). While Provident asserts it has "[n]o idea what Topic 9 seeks." (Doc. 48 at 18), Rosen attaches two internal memoranda from Provident and its 2012 annual report discussing the relationship between claims processing and Provident's accounting system (Doc. 51-3, 51-4, and 51-6). Further, even though the topic spans over twenty years (Doc. 48 at 18), the time period is reasonable given Rosen's fraud, bad faith, and RICO claims alleging Provident's pattern and practice of managing the block of disability policies to avoid coverage and increase profits (Doc. 45 at 9). Therefore, for purposes of discovery topic 9 is sufficiently relevant and stated with reasonable particularity. See Fed. R. Civ. Proc. 26 and 30.

**g. Topic 10**

Consistent with the federal rules, Rosen's revised deposition topic 10[24] is relevant and describes with reasonable particularity

---

[23] "Accounting for the Deferred Acquisition Costs (DAC) and Reserve Charges for the Individual Disability Closed Block segment from inception of the Individual Disability closed block to the present." (Doc. 45 at 8-9).

[24] "Complaints and lawsuits within the last ten (10) years that relate to individual disability policies.--The Plaintiff has revised the document request to complaints and lawsuits within th last five (5) years and deposition topic is revised to five (5) years as well." (Doc. 45 at 4).

the matter for examination. Fed. R. Civ. Proc. 26(b) and 30(b)(6).
Consistent with his cooperative discovery obligations under the
federal rules, Rosen revises this request to only complaints and
lawsuits within the last five years that relate to 337 policies
from policyholders in Alabama, Georgia, Florida, and Tennessee.
(Doc. 51 at 9). Provident has not responded or objected to this
revised topic. Additionally, given Rosen's fraud, bad faith, and
RICO claims, the topic is sufficiently relevant to a pattern or
practice of denying valid claims despite complaints and lawsuits
filed against Provident. (Doc. 45 at 10). Therefore, for purposes
of discovery revised topic 10 is within the acceptable boundaries
of discovery. See Fed. R. Civ. Proc. 30.

### h. Topic 11

Consistent with the federal rules, Rosen's deposition topic
11[25] is relevant and describes with reasonable particularity the
matter for examination. Fed. R. Civ. Proc. 26(b) and 30(b)(6).
Provident asserts that the topic seeks testimony on a legal
question (Doc. 48 at 20), however, while "welfare benefit plan" is
a legal term of art relating to ERISA, Rosen's deposition topic
focuses on Provident's "use" of salary allotment agreements as part
of its alleged strategy to invoke ERISA preemption to deny claim
benefits. Rosen's deposition topic does not extend to the legal

---

[25] "The use of salary allotment agreements in establishing
that Individual Disability policies are part of a welfare benefit
plan." (Doc. 45 at 10).

meaning or scope of "welfare benefit plan," but instead focuses on discovering certain testimony and facts surrounding Provident's organizational activities. Therefore, for purposes of discovery revised topic 11 is within the acceptable boundaries of discovery. See Fed. R. Civ. Proc. 30.

Therefore, for the above mentioned reasons, Rosen's renewed motion to compel deposition testimony will be granted.

## VI.  Sanctions

On February 20, 2015, the court entered a scheduling order advising the parties that "[m]otions to compel in discovery matters should, after attempts at resolution have failed, be filed promptly so as to avoid delays in preparations." (Doc. 43 at 2). Because of Provident's continued and facially unjustified lack of expedition and cooperation in the discovery process, which has no doubt has led to numerous delays in preparation, the court entertains the propriety of sanctions under Rule 37 and Rule 11.

### a.  Rule 37 sanctions

Pursuant to Rule 37, where a motion to compel is granted, "the court **must**, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. Proc. 37(a)(5) (emphasis added). In light of the fact that Rosen's renewed motion to compel (Doc. 50), supplement to his renewed motion to compel (Doc. 59),

and renewed motion to compel deposition testimony (Doc. 45) will be
granted and Provident's motion to compel (Doc. 57) will be denied,
Provident will be required to show cause why it is not obligated to
pay Rosen's reasonable expenses incurred in making the motion,
including attorney's fees.

**b.  Rule 11 sanctions**

Pursuant to Rule 11, a court may *sua sponte* order a party to
show cause why its conduct has not violated Rule 11(b), which
states in part that "the claims, defenses, and other legal
contentions are warranted by existing law or by a **nonfrivolous
argument** for extending, modifying, or reversing existing law or for
establishing new law . . . the factual contentions have **evidentiary
support** . . . [and] the denials of factual contentions are
**warranted** on the evidence." Fed. R. Civ. Proc. 37(b)-(c) (emphasis
added).

On January 21, 2015 this court entered a memorandum opinion
and order denying Provident's motion for partial summary judgment
based on alleged ERISA preemption, and Provident's motion to
dismiss under Rule 12(c) based on Rosen's RICO claims. (Doc. 38 and
39). However, despite this court's clear ruling, Provident has
repeatedly ignored and defied this court by refusing to take the
court seriously and making voluminous filings precluded by the
earlier rulings that ERISA does **not** preempt Rosen's state law
claims and that Rule 12(b)(6) does **not** bar Rosen's RICO claims.

(Doc. 47 at 8, 11, 14, 15, 16-17, 18, 19-20, 23 and Doc. 48 at 8, 10, 11, 12, 13, 15, 16, 17, 18-19, 20).

### CONCLUSION

For the reasons detailed above, the court by separate order will deny Provident's motion to strike (Doc. 52), its motion for a protective order (Doc. 55), and its motion to compel (Doc. 57), and will grant Rosen's renewed motion to compel (Doc. 44), supplement to his renewed motion to compel (Doc. 59), and renewed motion to compel deposition testimony (Doc. 45). Additionally, Provident will be required to show cause as to why sanctions are not appropriate under Rule 37 and Rule 11.

DONE this 10th day of July, 2015.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE